**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| JAEHYUN KIM,<br><br>          Plaintiff,<br>     vs.<br><br>MASSACHUSETTS COLLEGE OF<br>PHARMACY AND HEALTH SCIENCES,<br>and John Does 1-10,<br><br>          Defendant. | Case No.: 1:25-cv-13928-WGY |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Now comes the above-named Defendant, Massachusetts College of Pharmacy and Health

Sciences, properly named MCPHS University ("MCPHS" or the "University"), and hereby

opposes the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. As

reasons therefore, MCPHS states as follows:

**INTRODUCTION**

Mr. Kim initiated this litigation after being expelled from MCPHS following multiple

disciplinary matters, his refusal to adhere to MCPHS policies and procedures, and his

inappropriate and hostile treatment of multiple members of the MCPHS community. Thereafter,

Mr. Kim has engaged in a campaign of harassment and threatening behavior towards MCPHS

current and former students, faculty, staff, and administrators, undersigned counsel and their law

1

firm, WIT and members of the Colleges of the Fenway, and numerous other individuals. While

Mr. Kim's actions have mostly been through social media and via e-mails, he did attempt to visit

the undersigned's office on at least one occasion, as well as the Office of the President at

MCPHS. Mr. Kim's conduct has been reported to the Boston Police, who are actively

investigating and have applied for a criminal complaint with the Roxbury District Court that is

scheduled to be heard on February 10, 2026.

MCPHS takes all matters filed with this Court extremely seriously, and will defend itself

zealously and with the utmost professionalism. Here, Mr. Kim is clearly attempting to use this

Court as an additional forum to continue his publicity campaign against the MCPHS community

in the hope of creating enough public and financial pressure to simply get his way. As detailed

below, Mr. Kim's Motion for Temporary Restraining Order and Preliminary Injunction should

be denied. Indeed, given the circumstances described below and detailed in the attachments

hereto, MCPHS requests that this Court invoke its broad discretionary powers to grant a

protective order under F.R.C.P. Rule 26(c) upon a showing of good cause[1] prohibiting Mr. Kim

from contacting anyone in the MCPHS community except the undersigned counsel as well as

making any form of social media posts targeted at anyone in the MCPHS community.[2]

As detailed below, Mr. Kim has not—and cannot—prove likelihood of success on the

merits, or that the harm he alleges if the Motion is denied is greater than the risk of harm to

---

[1] "The district court has 'broad discretion' to decide 'when a protective order is appropriate and what degree of protection is required,' and great deference is shown to the district judge in framing and administering such orders." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (citations omitted).
[2] MCPHS makes this request here given the expedited nature of the Court's hearing on Mr. Kim's motion. To the extent the Court prefers additional formal motion practice and briefing, MCPHS will gladly do so.

MCPHS and its students and faculty. Accordingly, MCPHS respectfully requests that this Court deny Mr. Kim's Motion.

## FACTUAL BACKGROUND

1. In March 2021, Mr. Kim was admitted to the University's School of Pharmacy's Doctor of Pharmacy Program for Fall 2021. *See* **Ex A.**

2. On September 21, 2022, Mr. Kim was reported by other MCPHS students to Campus Police as sending harassing messages and threats, causing both students to worry about Mr. Kim's ability to cause them harm and whether they could safety study at the University; *See* **Ex B**.

3. On September 13, 2023, Mr. Kim was instructed not to have any direct or indirect contact with an MCPHS faculty member following an incident between Mr. Kim and the faculty member that caused said faculty member to feel unsafe on campus with Mr. Kim present; *See* **Ex C**.

4. Subsequently, Mr. Kim was temporarily prohibited from attending Campus Life sponsored events due to the interaction referenced in (3) above; *See* **Ex C**.

5. On September 25, 2023, Mr. Kim accepted responsibility for violating Provision 2.02 of the Handbook, Community Member Suitability. *See* **Ex D**.

6. On October 2, 2024, Mr. Kim was provided with a No Contact Order due to an incident with Mr. Kim and a fellow MCPHS student that took place on or around September 21 and September 23, 2024; *See* **Ex E**.

7. That same day, Mr. Kim received communication from the University informing him that it had received information about the above-mentioned incident, and as a result, had reason to

believe Mr. Kim violated the following provisions of the MCPHS Code of Conduct: *See* **Ex F**.

    a.   Provision 2.02, Community Member Suitability

    b.   Provision 2.08, Lewd Conduct

    c.   Provision 2.09, Disorderly Conduct

    d.   Provision 3.02, Verbal Abuse/Threats

8.  The October 2, 2024 communication also informed Mr. Kim that, pursuant to the MCPHS Student Handbook, a Level II Disciplinary Hearing[3] had been scheduled to take place on October 9, 2024 to address the above-mentioned violations. *See* **Ex F**.

9.  According to the MCPHS Student Handbook, "Level II Hearings will be conducted as soon as possible after an incident or complaint has been reported." *See* **Ex G**, p. 79.

10. On October 4, 2025, Mr. Kim filed a personal Leave of Absence ("LOA") for the Fall 2024 and Spring 2025 semesters. *See* **Ex H**.

11. October 8, 2024, the University advised Plaintiff that, due to Mr. Kim's LOA, "the University's student conduct process will be suspended regarding [his] allege violations and upcoming hearing process. **Should [he] seek to return to the University, [he] will be required to complete the student conduct process with a hearing upon [his] return**." (emphasis added). *See* **Ex I**.

---

[3] "Level II Hearings are formal hearings to assess a student's responsibility for allegedly violating the Student Code of Conduct and to assess sanctions for responsibility as appropriate. Incidents or complaints referred to a Level II Hearing involve the possible sanctions of suspension or expulsion in addition to the possible sanctions for a Level I Hearing." *See* **Ex G**, p. 78.

12. On October 17, 2024, Mr. Kim sent an e-mail message to one of his course coordinators, mentioning that initiated the LOA, alleging that he had received death threats from another student. *See* **Ex J**.

13. On October 22, 2024, Mr. Kim was formally informed by MCPHS that, pursuant to the Handbook, he was required to refrain from sending communications to faculty members, academic departments, or other University offices during the duration of his LOA, and was provided with the appropriate contacts and channels to communicate through. *See* **Ex K**.

14. Mr. Kim was also warned that any continued attempts at inappropriate communication could result in a further violation of the Code of Conduct under Provision 2.01, Obstruction or disruption of teaching, administration, the disciplinary system, or other University activities. *See* **Ex K.**

15. On January 15, 2025, Mr. Kim sent a list of requests to Associate Provost, Craig Mack ("Mr. Mack"), and Associate Provost, Anna Morin ("Ms. Morin"), in which he explicitly requested that his Disciplinary Hearing be cancelled, that the University apologize to him and refund his tuition from the Fall 2023, Spring 2024, and Fall 2024 semesters, and that the University arrange a transfer to universities of Mr. Kim's choosing by "fully utilizing every resource at hand including alumni networks." *See* **Ex L**.

16. On February 12, 2025, Mr. Kim was advised by Mr. Mack that his Disciplinary Hearing would not be cancelled, and reminded Mr. Kim that he would not be permitted to return to campus from his LOA without completing the disciplinary process. *See* **Ex M**.

17. On February 18, 2025, Mr. Kim submitted a Spring '25 Town Hall Pre-Event Survey which

    Mr. Kim submitted to the MCPHS Student Governing Association (SGA) in which he wrote,

    "Yeah why don't you ask Richard Lessard and Caroline Zeind why they send their little

    f***ing minion Craig Mack to try to shut me up," "University is god awful," "This university

    is a hellhole," and "I plan to shut this university down." *See* **Ex N**.[4]

18. On February 18, 2025, Mr. Kim sent Mr. Mack an e-mail in which he wrote, "You will be

    hearing from our lawyer very soon. …We will not only win, we will bring you to your

    knees." *See* **Ex O**.

19. On February 19, Mr. Kim sent Mr. Mack a subsequent e-mail in which he stated, "…we will

    sue you until we win. Consider this a warning." *See* **Ex O**.

20. On February 20, 2025, Mr. Kim was issued a No Trespass Order from the University's

    campus and a Cease and Desist letter due to his refusal to stop contacting MCPHS personnel

    through prohibited channels and in threatening and/or hostile manners. *See* **Exs P and Q**.

21. On February 24, 2025, Mr. Kim was formally expelled from the University due to continued

    refusal to comply with the University's disciplinary process as prescribed by the Handbook,

    as well as the University's determination that Plaintiff's expulsion was in the best interest of

    its entire community. *See* **Ex R**.

22. Following Mr. Kim's formal expulsion, his scorched earth campaign began.

23. To date, Mr. Kim has published numerous and frequent posts on various social media

    platforms—including LinkedIn, X, and Instagram—that undoubtedly constitute direct

---

[4] Richard Lessard is the University's President and Caroline Zeind is the University's Provost.

harassment and threatening behavior toward MCPHS and MCPHS faculty. Just a few

examples these posts from his LinkedIn profile include:

a. "What a disgusting, evil, fascist university. Typical left wing tactics, no? #mcphs #communists #leftwingradicals #fascists #fascism,"posted on or about April 9, 2025. *See* **Ex S, p. 1**.

b. "You tried to make me look like an absolute fool, and you will pay for this! Absolute communists nazis!," posted on or about April 10, 2025 (referring to and tagging the University). *See* **Ex S, p. 2**.

c. "You guys are literal Nazis. There is a reason why the entire world hates this industry, and you are the reason for it. #themostdisgustinginstitution #mcphs # evil #facism #communists," posted on or about April 9, 2025. *See* **Ex S, p. 3**.

d. "To President Lessard, Tim[] Fazio, Jacinda Felix Haro, Craig Mack, or whoever sides with this institution's madness. [T]his is a call to bring it. We can take it and we will fight back even harder," posted on or about April 18, 2025. *See* **Ex S, p. 4**.

e. "[M]aybe you guys did not understand the first time that I said it. We will win at all costs, no matter what. It is time for this madness to stop and we will take all measures necessary and take all remedies no matter what, come hell or high water," posted on or about April 18, 2025. *See* **Ex S, p. 4**.

f. "GETTING ASSOCIATED WITH MCPHS IS LIKE WILLING[LY] GIVING YOURSELF A SHOT OF THE CORONAVIRUS!! #DISGUSTING!! #GOAWAYLESSARD," posted on or about August 22, 2025. *See* **Ex S, p. 5**.

g. "We are prepared for round two. If you want it so bad, come f***ing get it @Massachusetts College of Pharmacy and Health Sciences," posted on or about April 13, 2025. *See* **Ex S, p. 6**.

h. "Good morning, soldiers. Overnight, the enemy's propaganda machine failed to silence me. Only ONE post taken down – and it was about a half-wit gooby goon lawyer nobody cares about. LinkedIn has spoken: the battlefield remains mine. I take every block, every BS TAKEDOWN WITH THE HIGHEST BADGE OF HONOR. WE DO NOT REST," posted on or about August 21, 2025. *See* **Ex S, p. 7**.

24. As mentioned above, MCPHS notified Boston Police of Mr. Kim's various communications

and posts. As a result, Boston Police has applied for a criminal complaint with Roxbury

District Court, which application is scheduled to be heard on February 10, 2026 (Case No. 0502-CR-005364).

25. In the application for a criminal complaint, the Boston Police provide a detailed account of Mr. Kim's concerning activities, and seek the following charges:

   a. Threat to Commit Crime under M.G.L. c. 275, § 2, on the basis of a statement Mr. Kim posted on his Instagram account on April 7, 2025, which read: "Kill Kill Kill."

   b. Threat to Commit Crime under M.G.L. c. 275, § 2, on the basis of a statement Mr. Kim posted on his LinkedIn profile on September 19, 2025, which read: "There is blood in the water. I smell it coming."

   c. Threat to Commit Crime under M.G.L. c. 275, § 2, on the basis of a statement Mr. Kim posted on his LinkedIn profile on November 10, 2025, which read: "They say justice exists. Tell that to the dead."

26. To date Mr. Kim continues to post alarming messages through his LinkedIn profile, other social media accounts, and through e-mails directed to the undersigned counsel and MCPHS community members. All told, these messages likely number well over 100.

## ARGUMENT

"A preliminary injunction is an extraordinary and drastic remedy." *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011), (quoting, *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)) (citations omitted). Thus, as established by the U.S. Supreme Court, "[t]he court's discretion to issue preliminary injunctive relief 'is to be used

sparingly, and only in a clear and plain case.'" *Brox v. Woods Hole*, 706 F. Supp. 3d 151, 156

(D. Mass. 2023), (quoting, *Rizzo v. Goode*, 423 U.S. 362, 376 (1976)) (citations omitted).

When issuing on preliminary injunctions, the court weighs four factors: "(1) a likelihood

of success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance

of equities in the plaintiff's favor, and (4) service of the public interest." *Brox v. Woods Hole*,

706 F. Supp. 3d 151, 156 (D. Mass. 2023), (quoting, *Arborjet, Inc. v. Rainbow Treecare Sci.*

*Advancements, Inc.*, 794 F.3d 168, 171 (1st Cir. 2015)). The moving party carries "the burden of

establishing that these four factors weigh in its favor." *Becky's Broncos, LLC v. Town of*

*Nantucket*, 138 F.4th 73, 77 (1st Cir. 2025). However, "[t]he sin qua non of this four-party

inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is

likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New*

*Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).[5]

## I.    Mr. Kim is not likely to succeed on the merits

Mr. Kim's allegations that MCPHS "imposed disciplinary and exclusionary actions upon

him without adherence to promised procedures, following protected activity and disability-

related requests" are wholly disproven by the factual record attached hereto, much of which Mr.

Kim chooses to ignore. As base, MCPHS followed its procedures on numerous occasions to

address complaints concerning Mr. Kim's conduct. In the latest complaint concerning Mr. Kim,

MCPHS had reason to believe that Mr. Kim engaged in conduct—on his own volition—that may

---

[5] "The standard for issuing a TRO is 'the same as for a preliminary injunction.'" *Orkin v. Albert*, 557 F. Supp. 3d 252, 256 (D. Mass. 2021), (quoting, *Bourgoin v. Sebelius*, 928 F.Supp.2d 258, 267 (D. Me. 2013)).

have violated provisions of the Code of Conduct, as defined by the Handbook. Shortly thereafter, MCPHS notified Mr. Kim that, as a result of the number and nature of the violations being reviewed at that time, he would be subjected to Level II Disciplinary Hearing. Only a few days thereafter, and prior to the date of the Disciplinary Hearing, Mr. Kim initiated LOA procedures. MCPHS informed Mr. Kim that the Hearing would be suspended until Mr. Kim attempted to return from his LOA. Mr. Kim refused to comply with the Handbook and demanded the Hearing be cancelled.

Mr. Kim has not established that he is likely to succeed on any of the nine counts asserted against MCPHS in his most recent complaint. Rather, Mr. Kim's complaint is ridden with unfounded and conclusory accusations against MCPHS that fit his narrative, including that he was discriminated and retaliated against on the basis of his race/national origin and on the basis of his disability, that a contract existed between himself and the University, and that the University engaged in unfair and/or deceptive conduct. His complaint has excluded numerous facts weighing against him for the purposes of shaping a false narrative that supports his baseless and harmful accusations.

Whereas Mr. Kim has failed to show a likelihood of success on the merits, his Motion should be denied. *See*, *e.g.*, *Bray*, 540 F. Supp. 3d at 102 (concluding that, Plaintiff failed to established a likelihood of success on the merits, and stating that, "for that reason alone, [Plaintiff']s motion for a TRO and preliminary injunction is denied); *McKenzie v. Option One Mortgage*, 321 F. Supp. 3d 186, 189 (D. Mass. 2018) (stating that the finding that Plaintiffs

failed to meet there burden of showing a likelihood of success on the merits, "essentially ends the inquiry").

**II.      Mr. Kim fails to establish a risk of irreparable harm absent injunctive relief**

"Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined." *Bray v. Worcester Polytechnic Inst.*, 540 F. Supp. 3d. 94, 102 (D. Mass. 2021), (quoting, *Massachusetts Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness of Com. of Massachusetts*, 649 F.2d 71, 74 (1st Cir. 1981)).

Mr. Kim's allegations as to the irreparable harm he will face if his preliminary injunction is not granted are speculative and insufficiently particularized to warrant this type of drastic relief. His argument relies merely on generalized statements about academic delay, licensure pathways, and reputational harm, rather than concrete evidence.

Further, Mr. Kim alleges that he has been excluded from enrollment and academic progression for an extended period of time and that his academic pathway has been disrupted for nearly three years. He also alleges that "[e]ach passing academic term permanently forecloses opportunities that cannot be recreated later, even if Plaintiff ultimately prevails on the merits." Mr. Kim could have initiated this litigation immediately following his expulsion but waited until approximately three academic terms passed before he initiated this lawsuit, adding to the time of his exclusion from the University.

Lastly, Mr. Kim's assertion that his academic pathway has been disrupted for nearly three years undermines his claim that immediate, irreparable harm will occur absent a preliminary injunction and confirms that any alleged injury is neither sudden nor incapable of later remedy.

### III.     The balance of equities does *not* tip in Mr. Kim's favor

Mr. Kim asserts that "Defendants face no comparable irreparable harm from temporarily reinstating Mr. Kim to student status pending adjudication" and that "[a]dministrative inconvenience or institutional preference cannot outweigh the permanent and compounding injury Mr. Kim otherwise faces." By stating as such, Mr. Kim ignores and diminishes the significant and harmful effects that his actions have had and will likely continue to have on other MCPHS students and personnel, as demonstrated by the facts stated herein.

Moreover, and as aforementioned, Mr. Kim's conduct was reported to the Boston Police Department, which filed a Criminal Complaint against Mr. Kim, charging him with three counts of Threat to Commit Crime pursuant to Massachusetts General Laws Chapter 275, §2. These charges respectively stemmed from the following publications made by Mr. Kim: "Kill Kill Kill" posted via Instagram on or about April 7, 2025 (*see* **Ex T**, p. 1); "They say justice exists. Tell that to the dead" posted on or about November 10, 2025 (*see* **Ex T**, p. 2); and, "There is blood in the water. I smell it coming" posted on or about September 19, 2025 (*see* **Ex T**, p. 3).

MCPHS was well within its right to subject Mr. Kim to the disciplinary framework provided by the Handbook—which MCPHS properly administered—and to expel Mr. Kim upon Mr. Kim's incessant refusal to adhere to that framework and other violations of the Student Code. Likewise, and as supported by Mr. Kim's numerous demonstrations of hostility and

pending Criminal Complaint, MCPHS is now well within its right to consider Mr. Kim a threat to its community and to not want him to return as a student, *regardless* of whether Mr. Kim is physically on campus or not. The record does not support Mr. Kim's narrative that MCPHS would face merely "[a]dministrative inconvenience or institutional preference" if his relief is granted.

Finally, Mr. Kim's requested relief of being temporarily reinstated is *not* "preserving the status quo ante pending adjudication." Rather, the "status quo ante pending adjudication" was that Mr. Kim was a former student of MCPHS' who had been expelled in February of 2025. Mr. Kim did not initiate the pending litigation until December of 2025, at which time, he had been a former, expelled student of MCPHS' for approximately ten months. Thus, Mr. Kim seeks to *alter* the status quo by compelling affirmative reinstatement to the University. By doing so, Mr. Kim requests relief that is inconsistent with the purpose of a preliminary injunction: "to preserve the status quo so that upon full adjudication on the merits the district court can more effectively remedy any discerned wrongs." *Rarities Group, Inc. v. Karp*, 98 F. Supp. 2d 96, 104 (D. Mass. 2000), (citing, *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir. 1995)). In fact, "a preliminary injunction that has the effect of *disturbing*, rather than preserving, the status quo 'normally should be granted only in those circumstances when the exigencies of the situation demand such relief.'" *Id.*, (quoting, *Mass. Coalition of Citizens with Disabilities v. Civil Defense Agency*, 649 F.2d 71, 76 n.7 (1st Cir. 1981)). There are no exigent circumstances here that warrant disturbing the "status quo" and inevitably harming the public interest of MCPHS, its faculty, and its students.

**IV.     The relief requested is, in fact, *against* public interest**

While there is a strong public interest in the protection of constitutional rights, there also

exists "a strong public interest in allowing school officials to do their work undisturbed by

unnecessary lawsuits." *Harris as next friend of RNH v. Adams*, 757 F. Supp. 3d 111, 144 (D.

Mass. 2024). It is unquestionable that "school officials are entitled to a great degree of deference,

including in their disciplinary decisions." *Id.* at 144-45, (quoting, *Norris on behalf of A.M. v.

Cape Elizabeth Sch. Dist.*, 969 F.3d 12, 29 (1st Cir. 2020) ("The Supreme Court has repeatedly

emphasized the necessary discretion school officials must exercise and the attendant deference

owned to many of their decisions.")). In the context of education, "[c]ourts must be 'chary about

interfering with academic and disciplinary decisions made by private colleges and universities'"

and "must recognize and respect the strong interest of a private university in managing its own

affairs." *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 602 (D. Mass. 2016), (quoting, *Schaer v.

Brandeis Univ.*, 735 N.E.2d 373, 381 (Mass. 2000)) (citations omitted). *See also*, *Bray*, 540 F.

Supp. 3d at 103 ("It is important to allow such institutions to maintain their right to pursue

disciplinary proceedings in accordance with stated policies and procedures such as [defendant]

has done in this case.").

Here, in contrast to public interest, granting the relief requested by Mr. Kim would

impede and intrude into the University's ability to manage student conduct and campus safety.

## CONCLUSION

For all of the reasons set forth herein, the Defendant respectfully requests that this Court

deny the Mr. Kim's Motion for Temporary Restraining Order and Preliminary Injunction.

Defendant further requests that this Court grant it a protective order against Mr. Kim to protect

the University and its faculty and students from Mr. Kim's incessant online harassment, and

asserts that the record reflects that there is "good cause" to do so.

Respectfully submitted,

**Defendant,**
Massachusetts College of Pharmacy and
Health Sciences University
By Its Attorneys,

/s/ *Timothy J. Fazio*
Timothy J. Fazio (BBO #654157)
Bridget C. Araldi (BBO #717261
Manning Gross + Massenburg LLP
125 High Street
6th Floor, Oliver Street Tower
Boston, MA 02110
TEL: (617) 670-8800
FAX: (617) 670-8801
tfazio@mgmlaw.com
baraldi@mgmlaw.com

Dated:  January 28, 2026

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the United States District Court for the District of Massachusetts by filing through the CM/ECF system, which served a copy of the foregoing upon all counsel of record on January 28, 2026.


_/s/ Timothy J. Fazio_
Timothy J. Fazio

16