**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| JAEHYUN KIM,<br>　　　　　Plaintiff,<br><br>v.<br><br>MASSACHUSETTS COLLEGE OF<br>PHARMACY AND HEALTH SCIENCES,<br>and John Does 1-10,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No: 1:25-cv-13928-WGY** |

**PLAINTIFF'S REPLY IN SUPPORT OF POST-TRIAL MOTIONS AND ADDENDUM**

**REGARDING DECISIONMAKER**

Plaintiff Jaehyun Kim respectfully submits this Reply in response to Defendant's

oppositions (Dkts. 123, 124, 125).

**I. THIS CASE IS NOT ABOUT DISCIPLINE—IT IS ABOUT RETALIATION**

Defendant frames this case as a dispute about Plaintiff's conduct and the propriety of

disciplinary action.

That is incorrect.

Plaintiff is **not challenging the expulsion itself**, nor seeking reinstatement. Plaintiff has

made clear he does not wish to return.

This case instead concerns a **continuous chain of escalating retaliatory actions** taken in

response to Plaintiff's protected activity—both internal and external.

The issue is not whether the University had authority to discipline.

The issue is:

**who made the decisions, when they were made, why they were made, and what considerations controlled them—across the entire chain of escalating actions following protected activity.**

## II. CORE RETALIATORY CHAIN AND FAILURE OF PROOF

This case is not about Plaintiff's conduct, nor is it limited to the expulsion decision in isolation. It is about a **continuous chain of escalating retaliatory actions** taken in response to Plaintiff's protected activity—both internal and external.

That chain begins with Plaintiff's internal complaints and continues through multiple external complaints, including:

- complaints to the **Office for Civil Rights** on **February 3, 2025**,

- acceptance of those complaints on **February 19, 2025**,

- the subsequent expulsion on **February 20, 2025**,

- the filing of this lawsuit on **December 22, 2025**

- And a criminal complaint application initiated the very next day, on **December 23, 2025.**

The record further reflects institutional coordination surrounding these events.

This is not a series of isolated actions.

It is a **pattern of retaliatory activity**.

The timing confirms that pattern.

A criminal complaint application was initiated the very next day, on **December 23, 2025.**

That escalation—from internal administrative measures to external law enforcement involvement immediately following protected activity—is material.

It cannot be explained as routine discipline.

It reflects a shift driven by institutional risk, regulatory exposure, and reputational concerns triggered by Plaintiff's complaints.

## III. ONCE FRAMED CORRECTLY, THE DECISIONMAKER QUESTION BECOMES UNAVOIDABLE

Once this case is understood as a retaliatory chain driven by institutional risk, the decision-making structure becomes central.

External complaints of this nature implicate:

- regulatory exposure
- institutional liability
- reputational risk

Those are not handled at the level of routine student discipline.

They are escalated to senior leadership.

The record reflects precisely that escalation:

- a senior-level meeting

- involving multiple administrators

- including the University President

In that context, Defendant's position collapses.

If no one can identify the decisionmaker, how can Defendant certify that the highest-ranking official in the room had no unique knowledge of the decision?

Either:

- the decisions in this chain were driven by those considerations—
  in which case the President necessarily possesses unique, firsthand knowledge

or

- Defendant's account of the process is incomplete

**There is no middle ground.**

## IV. THIS CASE TURNS ON A SINGLE UNANSWERED QUESTION

This case reduces to a single issue:

**Who made the decisions in this escalating chain and for what reason in regards to the protected activity?**

Defendant has never answered that question:

- not before trial,

- not at trial,

- not in its post-trial oppositions

## V. THE TRIAL RECORD CONFIRMS NO DECISIONMAKER EXISTS

The absence is not theoretical—it is established in the transcript.

When the Court asked:

**"And the order was under the authority of what person?"**

the answer was:

**"I'm not sure."**

The only attribution in the record is a signature on a later letter.

That is not decision-making. It is ministerial documentation after the fact.

At the same time, the record confirms:

- the expulsion resulted from a "collaborative conversation," and

- the University President was present

Yet:

- no witness identified a decisionmaker

- no witness described how the decision was reached

- no witness articulated who exercised authority

A central participant denied involvement altogether.

## VI. DEFENDANT'S POSITION IS INTERNALLY INCONSISTENT

Defendant's position **requires all of the following:**

- a sequence of escalating actions occurred

- those actions followed protected complaints and litigation

- the President was present

- no decisionmaker exists

- no participant had unique knowledge

**That combination does not hold.**

If no decisionmaker can be identified, those present necessarily possess unique knowledge of how the decisions were made.

## VII. DEFENDANT RELIES ON RECORDS THAT DO NOT ADDRESS THE ISSUE

Defendant points to conduct records, incident reports, and correspondence.

Those are outcome records.

They do not establish:

- who made the decisions

- when they were made relative to protected activity

- why escalation occurred

- what considerations controlled the outcome

A conduct file does not resolve a retaliation claim.

## VIII. THE RECORD CONFIRMS THE ABSENCE OF DELIBERATIVE MATERIALS

Despite a sequence of escalating institutional actions, the record contains:

- no internal decision memoranda

- no deliberative communications

- no documentation identifying decision authority

This absence is not speculative.

It is Defendant's own position.

## IX. A KEY WITNESS DID NOT APPEAR

A subpoenaed senior official—the Chief Information Officer, Tom Scanlon—did not appear at trial.

At the same time:

- **no deliberative materials were produced**

- **no decisionmaker was identified**

Taken together, these are not minor gaps.

They go to the core of the case.

## X. DEFENDANT CANNOT SHIFT THE BURDEN

The decision-making process:

- was internal

- controlled entirely by Defendant

- never disclosed despite direct requests

The absence of a decisionmaker is not a failure of Plaintiff's proof.

**It is a failure of Defendant's record.**

## XI. A "COLLABORATIVE CONVERSATION" IS NOT A DECISION

A conversation is not a decision.

A final institutional action requires, by their own handbook:

- A decisionmaker, or

- A defined mechanism of authority

- Documentation

- A clear reasoning for doing so

- A list of charges

- Reasoning for those charges

- A process where the Plaintiff is allowed to confront his accusers and false accusations.

The record contains neither.

## XII. THIS IS NOT A TECHNICAL DEFECT, IT IS DISPOSITIVE

Without identifying:

- who decided

- when they decided

- why they decided

- what controlled the decision

the Court cannot determine:

- causation

- motive

- Pretext

A result without an author cannot support findings.

## XIII. THE COURT SHOULD REQUIRE A DIRECT ANSWER

Defendant should be required to state:

- who made the decisions

- when they were made

- why they were made

- what considerations controlled them

## XIV. IF NO DECISIONMAKER EXISTS, THE RECORD FAILS

If Defendant cannot identify:

- a decisionmaker, or

- a decision-making mechanism

then the record establishes that the actions lack attributable authority.

That is not a gap.

It is dispositive.

## CONCLUSION

This case is not about conduct.

It is not a challenge to discipline.

It is about a **pattern of retaliation reflected in a continuous chain of escalating actions** following protected civil rights activity.

The timing, the executive involvement, the absence of deliberative records, the missing witness, and the failure to identify decisionmakers all point in the same direction.

Defendant's oppositions do not resolve these issues.

They avoid them.

This case reduces to four questions:

**Who decided.**

**When it was decided.**

**Why it was decided.**

**And what controlled the decision.**

Plaintiff respectfully requests that the Court require those answers and address the consequences of their absence, along with granting of Plaintiff's post trial motions of amending

his complaint to conform to the evidence, granting his motion for sanctions, his motion for

reconsideration of in camera review, grant his motion reopen the evidentiary record to fully

capture the entire chain of events, and/or reorder a new trial with key decision makers involved,

to fully capture the spirit of justice.

**Respectfully submitted,**

April 7, 2026
Jaehyun Kim
Pro se Plaintiff
815 E St, PO Box #12214
San Diego, CA, 92112
857 381 3352
jaehyunkim720@gmail.com

**CERTIFICATE OF SERVICE**

I, Jaehyun Kim, hereby certify that on April 7, 2026, I filed with the Court through the CM/ECF system the foregoing document which sent notification of such filing to all counsel and parties of record.

_____

Jaehyun Kim